UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

          v.                             Docket No. 5:12-CR-567(NAM)

JOHN TEBBETTS,

                  Defendant.

_____

### DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The Defendant submits the following supplemental sentencing memorandum for the Court's consideration at sentencing, scheduled for July 1, 2014.

**I.    THE DEFENDANT SHOULD RECEIVE A DOWNWARD DEPARTURE BECAUSE HIS BASE OFFENSE LEVEL IS THE SAME AS A FAR MORE CULPABLE DEFENDANT**

Subsequent to the submission of the Defendant's sentencing memorandum dated December 12, 2013 (Docket No. 40), the Court held a hearing to resolve the issue of the base offense level to be accorded to the substances Mr. Tebbetts possessed. The Court issued its Memorandum-Decision and Order on May 14, 2014 (Docket No. 58), holding that pursuant to USSG §2D1.1 Application Note 6, THC is the most closely related controlled substance to the plant material possessed by Mr. Tebbetts to which the controlled substances AM2201, JWH-122, JWH-203 and JWH-250 had been applied. Accordingly, the 11.9 kilograms[1] of the mixture or substance containing the pure controlled substances

---

[1] *See* Plea Agreement (Docket No. 3), p. 7; Defendant's Sentencing Memorandum, p. 3 (chart).

which Mr. Tebbetts possessed converts to 1,997.9 kilograms[2], or <u>over two tons</u>, of marijuana. The resulting base offense level is thus 32, corresponding to at least 1,000 but less than 3,000 kilograms of marijuana[3].

Under this analysis, Mr. Tebbetts is punished for possessing the weight of a mixture or substance which is largely inert plant material, but with the same severity as if he possessed the controlled substances in their pure form. Those higher up in the chain of culpability, such as manufacturers and upper-level distributors and importers, are more likely to possess the controlled substances in their pure form because they are closer to the means of production and farther from the point of distribution, and to allow for ease of transportation and decreased risk of detection. Those at the bottom of the distribution chain, such as Mr. Tebbetts, are more likely to have the product in its commercially sold form – applied to inert plant material. Thus, under the analysis applied in this case, those at the bottom of the distribution network face exponentially[4] greater punishment under the Guidelines than those higher up because of the increased weight of the mixture or substance they are more likely to possess.

---

[2] Memorandum-Decision and Order, pp. 16 - 17.

[3] The additional marijuana equivalents for the controlled substance analogues in Counts 3 through 5 (164 kilograms) do not increase the base offense level from 32. *See* Memorandum-Decision and Order, p. 17. The conviction for money laundering from Count 6 is grouped and similarly has no effect on the offense level. *See* PSR, par. 35.

[4] For example, Dr. Brown testified at the hearing that marijuana is often 3 to 5 percent THC. T. 77. Dr. Ghozland testified that the pure controlled substances at issue here were at least as potent as THC ("I would say a gram of AM2201 produces at least the same effect as a gram of THC."). T.32. Assuming that the mixtures or substances commercially sold and possessed by Mr. Tebbetts were meant to mimic the effects of marijuana, and would thus have similar concentrations of the psychoactive substances as marijuana (3 to 5 percent), a given quantity of AM2201, for example, would produce 20 to 30 times or more its weight of a mixture or substance of the type possessed by Mr. Tebbetts.

The failure to provide a substantial downward departure for a defendant who possesses the mixture or substance, as opposed to the pure controlled substances, thus rewards manufacturers and distributors. A substantial downward departure is therefore warranted to remedy the resulting inequality.

The Defendant submits that the Court should depart downward so that the mixture or substance possessed by him is treated the same as if it were marijuana, which the substances were intended to imitate. The resulting base offense level would thus be 26, a six-level downward departure[5].

## II. MR. TEBBETTS' SENTENCE SHOULD EQUITABLY REFLECT THE SENTENCES AND RELATIVE CULPABILITY OF OTHER RELEVANT DEFENDANTS

One of the three objectives of Congress in enacting the Sentencing Reform Act of 1984 was to eliminate the disparity in sentences for similar criminal offenses committed by similar offenders. *See* USSG, Ch. 1, Pt. A. A review of sentences of several other relevant defendants yields that they have received sentences significantly below what the guideline range in Mr. Tebbetts' case portends.

William Oldenburg was prosecuted in U.S. District Court in the District of Idaho (Case No. 1:12-CR-136 (EJL)). According to a press release from the U.S. Attorney's Office for the District of Idaho[6], Oldenburg owned two head shops which sold AM2201 (one of the controlled substances involved in this case) and UR-144. The docket reflects that Oldenburg pled guilty to Counts 4 and 10 of a superseding indictment, charging conspiracy to distribute a controlled substance analogue[7] and conspiracy to structure transactions to avoid reporting requirements. According to the press release,

---

[5] *See* Defendant's Sentencing Memorandum, p. 3 (Chart).

[6] "Head Shop Owner Pleads Guilty to Conspiracy Charges in Treasure Valley Case," U.S. Attorney's Office, District of Idaho, March 25, 2013, available at *http://www.fbi.gov/saltlakecity/press-releases/2013/head-shop-owner-pleads-guilty-to-conspiracy-charges-in-treasure-valley-case* (last accessed June 22, 2014).

[7] Both substances were apparently controlled substance analogues at the time of the offense charged, although they are now listed as controlled substances.

Oldenburg admitted responsibility for 813.45 kilograms of a mixture or substance containing the analogues, an amount that dwarfs the approximately 12 kilograms of the mixture or substance possessed by Mr. Tebbetts.  The docket sheet reflects that Oldenburg was sentenced to 3 years' probation, 200 hours of community service and $5,000.00 in fines.

Nicolas Zizzo and Benjamin Lowenstein were the owners/principals of Consortium Distribution, which manufactured and distributed bath salts to Mr. Tebbetts and others throughout the country.  Both Zizzo and Lowenstein were prosecuted in the District of Arizona (Case No. 2:12-CR-1419 (DGC)).  The docket for that case reflects that Lowenstein was sentenced to a term of imprisonment of 18 months (Docket No. 593).  Zizzo was sentenced to 54 months (Docket No. 652).

Of note, the controlled substance analogues with which Zizzo and Lowenstein were involved convert to marijuana equivalents at a 380:1 ratio, more than double the 167:1 ratio of most of the substances Mr. Tebbetts possessed.  Both were involved in the nationwide distribution of significant quantities of bath salts, and were far above Mr. Tebbetts in the chain of distribution and in terms of relative culpability. Oldenburg admitted to conspiring to structure currency transactions to avoid reporting them, and thus to helping frustrate prosecution; Mr. Tebbetts's "money laundering" conviction involved spending proceeds of illegal activity, but did not involve any attempt to disguise their source, and Mr. Tebbetts in fact conducted his transactions above board, filing currency transaction reports when required.

Given his role relative to the above individuals, together with the other considerations advanced in this and the Defendant's prior submissions to the Court, Mr. Tebbetts submits that he is entitled to an extraordinarily lower sentence than both Zizzo and Lowenstein, and more in accord with the sentence received by Oldenburg. I note that, as of the prospective sentencing date of July 1, 2014, Mr. Tebbetts will have already served 14 ½ months[8].

---

[8] *See* PSR, par. 10.

### III.   MR. TEBBETTS SHOULD RECEIVED A TWO-LEVEL DEPARTURE BASED ON THE PROSPECTIVE REDUCTION OF DRUG OFFENSE LEVELS IN THE SENTENCING GUIDELINES

According to an April 10, 2014 news release by the U.S. Sentencing Commission[9], the Sentencing Commission has voted unanimously to reduce the base offense levels for all drug types in the Drug Quantity Table by two levels. That news release provides that, absent Congressional action, the amendments will be effective November 1, 2014. The Sentencing Commission's website reflects that the Commission has not yet decided whether to apply the prospective amendments retroactively, and is seeking public comment on the issue[10].

The Defendant submits that it would be inequitable for him to not to receive such a two level reduction in anticipation of this change, when a defendant sentenced four months from now for the same offense will likely have the benefit of the lower levels.  Accordingly, the Defendant respectfully requests that the Court depart downward two levels based on this prospective change. On information and belief, the Department of Justice's policy is that the U.S. Attorney's office will not oppose this request.

Dated: June 23, 2014

Respectfully submitted,

/s/

George F. Hildebrandt
Attorney for Defendant, John Tebbetts
Bar Roll No. 505664
The Crown Building
304 S. Franklin Street
Syracuse, New York 13202
Tel. (315) 422-4742

---

[9] "U.S. Sentencing Commission Votes to Reduce Drug Trafficking Sentences," United States Sentencing Commission, April 10, 2014, available at *http://www.ussc.gov/* (last accessed June 22, 2014).

[10] "Issue for Comment: Retroactivity," available at *http://www.ussc.gov/* (last accessed June 22, 2014).

5